States v. Lucas. Counsel, I understand you were informed about the decision of our court yesterday in the United States v. Dubois. Mr. Adler, it's always good to see you. Please come and speak with us. Thank you, Your Honor. May it please the court, Andrew Adler from the Federal Defender's Office on behalf of Cast Lucas. In light of the decision yesterday in Dubois, we think this court should wait to decide this appeal until the Supreme Court decides the Brown v. Jackson cases, which were argued on November 27. We think that decision will be dispositive of this case. If the Supreme Court rejects the government's time of prior conviction rule in that case. But that's an ACCA case, right? Correct, Your Honor. This is a guidelines case? Correct, Your Honor. And they're different, aren't they? They are, Your Honor. However, if the Supreme Court rejects the time of prior conviction rule, we believe that will abrogate this court's timing holding yesterday in Dubois. And the reason is the Supreme Court will have necessarily rejected the government's interpretation of McNeil. And that interpretation of McNeil underlies, informs the basis of the government's entire position in this case, this court's holding yesterday on the timing issue in the guideline context. Now, it is true there are differences between ACCA and the guidelines, but we think actually those differences argue in favor of a time of sentencing rule under the guidelines more than under ACCA. The problem with the argument, and I think it will be illuminating to see what the Supreme Court says in Jackson and Brown, but it's hard to say that even if they reject a backward-looking thrust and look prospectively somehow in the ACCA context that you can say it abrogates, that is to say it demolishes the props, all of the props upon which Dubois and these other cases stand. We disagree with that. I think that's the trouble. It may suggest strongly, but under our case law, we require, and we've debated this question and maybe our court has said more than it ought to in that regard, but our law is pretty clear that abrogation really requires in essence gutting, eviscerating everything upon which the holding stands. Can we fairly say no matter what the Supreme Court says in Jackson and Brown that that's what happened? Even if they said in dicta, and we think this strongly suggests the same ruling ought to apply in the guideline context, even that wouldn't amount to abrogation under our law, would it? Your Honor, we have to see what the Supreme Court says, but our position is that if the Supreme Court rejects the government's argument in that case and rejects the interpretation of McNeil, that will eviscerate any basis for a time of prior conviction rule under the guidelines. This Court's opinion yesterday on pages 26 through 29, it's all McNeil, all McNeil. Without McNeil, there is no basis for a time of prior conviction rule, and in fact, the arguments for a time of federal sentencing rule are stronger under the guidelines than... No one in Jackson is arguing that McNeil should be overruled. No, Your Honor, however, the entire, and I think this is important, the entire basis of our argument, I represent Petitioner Jackson in that case, our argument for distinguishing state law versus changes to federal law. It is about, McNeil addresses what we call step one of the categorical approach, which is ascertaining the historical attributes of the prior. That's a function of state law. We're talking about the elements and the statutory maximum, but when it comes to the controlled substance issue, that goes to the criteria under which the recidivist enhancement is applied. That is not, our position is that that is not governed by McNeil, and if the Supreme Court says that, then that will gut the entire basis of the holding. That decision yesterday is not just based on McNeil. McNeil, we said, supports our reading of the plain text of the guideline itself. Your Honor, we believe that is actually just based on the same as McNeil, because McNeil relied heavily on the phrase... Of course, the language is different. Your Honor, we think the language is different in our favor. Previous conviction, subsequent to, that's all the same thing, in our opinion, but what the guidelines have that ACCA does not is, number one, there is a textual default rule for time of federal sentencing codified in the Sentencing Reform Act that did not exist in the ACCA context, and second, unlike ACCA, which refers solely to previous convictions, the guidelines talk about the instant offense as well, and we know that if we're talking about an instant drug offense, we have to be looking at contemporary schedules. That's the only thing it could be, and we think the same would have to be true for a prior offense as well, because there's a single controlled substance offense definition here. It cannot mean one thing for instant offenses and another thing for prior offenses. That would be impermissible as a matter of statutory... Let's cut to the chase, okay? Dubois is binding precedent. Yes. It forecloses, so long as it is the law of this circuit, it forecloses your argument, does it not? Correct. So really, the only thing is about what to do... That's correct, and that's... Down the road. That's correct, and that's why I'm trying to... We're bound by that. Correct, Your Honor. That does control this case. Correct, Your Honor. That's why I'm focusing on the impact of this forthcoming Supreme Court decision and what it might be. So if, and that's why I'm, obviously if the Supreme Court affirms, there's going to be no abrogation argument for us. If the Supreme Court, however, accepts either of the petitioner's arguments in that case and rejects the government's argument based on McNeil, then I just don't see any prop on which this holding yesterday can... I'm sorry about that, Mr. Arnett. Yes, of course, we don't know what the Supreme Court will do, but the other thing I'd say too is... Of course, my colleagues on the Dubois panel think that no matter how Jackson turns out, it won't affect Dubois. Your Honor, I did read the concurrence yesterday. I was, frankly, astonished to read that because I'm not aware of any situation where a panel or concurrence has opined about the application of a Supreme Court decision that has not yet been issued and... I understand that. I didn't join that concurring opinion, but, you know, I respect my colleagues, but... We appreciate that, Your Honor. And not only that, but goes so far as to say that this to an issue of federal sentencing law that is virtually identical to the one that we are dealing with. And I think that is premature at best and inappropriate at worst because it suggests a prejudging of the decision. This is an important federal sentencing issue here. I don't think it should be prejudged. We should wait to see what the Supreme Court does. The other thing about that concurrence is, substantively, I didn't quite understand it because the main thrust of that concurrence seemed to say, well, there is no express cross-reference to the federal CSA schedules in the guidelines like there is in ACCA. But that, to us, has nothing to do with the timing question. That absence of a cross-reference supports the first holding yesterday about the state schedules, right? But it doesn't have anything to do with timing. Whether there's an express cross-reference to federal schedules or not, the meaning of controlled substance in the guidelines is still incorporating the state and federal schedules. The Sentencing Commission knew that those schedules would be dynamic. And the only other point that the concurrence made yesterday was that the Sentencing Commission could not amend the state schedules in the way that Congress could amend the federal schedules. And that's true. But again, I think, beside the point, it doesn't go – it's not an affirmative reason for adopting a time of prior conviction rule under the guidelines. And it's true, of course, the Sentencing Commission can't amend the state schedules, but the Sentencing Commission can amend the criteria. And so if the Sentencing Commission doesn't like the way the states are amending their drug schedules, then they can adopt a federal-only criteria. Or they can adopt some other criteria entirely. Okay. And so, I think you understand our argument. Yeah, I think we do. But you agreed that at least for the time being, DuBois controls this case. Of course, Your Honor, we agree with that. But I really – I think it would be very hard for this Court, in the face of a Supreme Court decision that squarely holds that McNeil does not support a time of prior conviction ruling, to come up with any other basis to support that time of prior conviction rule under the guidelines. Well, we'll see. We'll see about that, Mr. Adler. Thank you. Thank you. Ms. Mariani. Good morning, Your Honors, and may it please the Court. I'm Assistant United States Attorney Nicole Mariani, appearing on behalf of the government. As we've already discussed this morning, yesterday afternoon, when this Court issued its published opinion, the United States v. DuBois, it decided the issue in this case. The only thing I would like to take one moment to respond to Mr. Adler's point is, I think as Judge Marcus very wisely pointed out, under the abrogation law in this circuit, I think it would be very hard for Jackson to abrogate DuBois, seeing as they deal with two different sentences. We have the Armed Career Criminal Act, the sentencing guidelines. They have different language. They have a different purpose. I think the DuBois decision really rested, first and foremost, on the plain text and the purpose of the career offender guideline, which is different than the Armed Career Criminal Act. If I relied on the purpose, I don't remember that. You did not, but I think the purpose, you're correct. I think the purpose adds an additional illuminating factor behind it, which if we think about what's the purpose of the career offender guideline, it is to deter recidivism. It's to deter the committing of future crimes by punishing those future crimes more harshly if the defendant has committed certain crimes in the past. This is a little different than the Armed Career Criminal Act, which is really looking at which felons we really want to make sure don't have firearms. It's a statutory mandatory sentence. It's 15 years. It's pretty severe, whereas in the guidelines, we're living in an advisory system. The district court is still free to vary downward, to depart downward, and so it can cast a wider net to sort of deter recidivism and catch these repeat lawbreakers because there is this flexibility built into the system if anything is unfair. If the court has no further questions, the government will rest on its brief and the clear holding of the law and ask that Mr. Lucas' sentence be affirmed. Thank you. Well, I'll just respond to the purpose argument, even though we think it's obviously not relevant, but if you're going to ask about deterrence, I think the time you ask about that is when someone commits the federal crime, and this argument is squarely before the Supreme Court right now under ACCA. I'm not aware that ACCA and the career offender guideline have a fundamentally different purpose in that respect, and I think it's actually more important to think about incapacitation, which is another purpose of this guideline, and I think the holding yesterday that the controlled substance offense refers also to the state schedules actually bolsters our argument on incapacitation because it's going to mean that for defendants to prevail, there has to be a consensus between the federal government and the states that a particular substance is no longer dangerous. It's no longer illegal, and so if we're going to think about purpose, then I think we need to think about incapacitation. We should not be subjecting criminal defendants to very severe career offender enhancements where the state and the feds both agree that the substance is no longer dangerous. If I could just make one final point because these points really were not addressed yesterday in the opinion. The default rule, I mean this is important to understand. If the Supreme Court rule, so there's three options. You can affirm, and then we've got nothing. If the Supreme Court adopts Petitioner Jackson's time of federal offense rule, I suspect it will do so based on our primary argument, which is that there is a default rule when it comes to statutory penalties that you look to the law in effect at the time someone commits the crime. Of course, in the guidelines, there is a different default rule. It is again 3553A4A2, and it's in the text of the guidelines 1B1.11. You look to the federal law in effect at the time of sentencing, and this is another basis to distinguish McNeil because McNeil, and this appeared yesterday in the court's opinion, refers to, well, we don't want to tie the statutory penalties to the time of sentencing. That would be arbitrary. That same rationale does not apply in the guidelines because, again, we are always using the time of sentencing in that context, and there's always going to be arbitrary distinctions. People are always benefiting and not benefiting based on the happenstance of when they're sentencing. That's another distinction that I just wanted to highlight here for the court today. We really appreciate the court's time. Thank you so much. Thank you, Mr. Adler. Let's hear the next case, Alabama Creditors v. Doran.